IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-02472-EWN-OES

DENNIS JAMES KYLER,

Plaintiff,

vs.

CONNIE BATSON,
DR. CREANY,
DR. CABILING,

Defendants.

---

## RECOMMENDATION FOR DISMISSAL

---

**Entered by O. Edward Schlatter, United States Magistrate Judge.**

## INTRODUCTION

Pending before the court is defendants' Motion For Summary Judgment.  Pursuant to the General Order Of Reference, filed January 29, 2004, and the provisions of 28 U.S.C. § 636(b)(1)(B) and D.C.COLO.LCivR 72.1, this motion has been referred to me for Recommendation. Based upon the record herein, I recommend that this lawsuit be dismissed in its entirety. The parties' rights to seek review or reconsideration of this Recommendation, by filing objections within ten days, are attached hereto, and are entitled "Advisement Under Fed. R. Civ. P. 72."

## BACKGROUND

Plaintiff, a Colorado state prisoner, has filed *pro se* a Complaint which alleges that his Eighth Amendment rights have been violated. In the pleading, plaintiff asserts that he suffers from Von Recklenhausen's Disease, or neurofibromatosis, which causes him to develop hundreds of painful tumors all over his body. Plaintiff named as defendants various medical professionals who he alleges are delaying or denying him medical treatment, as well as policy makers within the Colorado Department of Corrections ("CDOC") who he contends are responsible for CDOC policies to cut medical services to inmates.

On February 2, 2005, defendants Joe Ortiz and Rebecca K. Romano were dismissed from this action. <u>See</u> ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATIONS, Docket #74. The remaining defendants have now filed a Motion For Summary Judgment, arguing that the undisputed evidence establishes that plaintiff has not suffered a violation of his Eighth Amendment rights. Specifically, the defendants argue that plaintiff cannot demonstrate a sufficiently serious medical need and that he cannot show that any of the defendants knew of and disregarded an excessive risk to his health or safety. Defendants further argue that they are entitled to qualified immunity and that plaintiff's claim fails because he has endorsed no expert to establish the claim. Plaintiff has responded in resistance to the motion, and the defendants have countered his position with a reply.

**DISCUSSION**

**I.     Defendants' Motion For Summary Judgment.**

**A.     Standard Of Review.**

Summary judgment is appropriate if the record demonstrates no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof. Celotex, 477 U.S. at 325.  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see, also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The nonmoving party may not rest on its pleadings, but must set forth specific facts.  See Applied Genetics, 912 F.2d at 1241.

3

The court must view the record in a light most favorable to the party opposing the motion for summary judgment. See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. See Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the [fact finder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

Because the plaintiff is proceeding without counsel, the court must construe his pleadings and other filings liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court should not be the pro se litigant's advocate. Hall, 935 F.2d at 1110.

### B.    Plaintiff's claim of deliberate indifference to his serious medical needs.

A prisoner's Eighth Amendment Rights are violated when deliberate indifference is shown to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Eighth Amendment applies to state officials through the Fourteenth Amendment. Mitchell v. Maynard, 80 F.3d 1433, 1440 (10th Cir. 1996) (citing Rhodes v. Chapman, 452 U.S. 337 (1981)).

The deliberate indifference standard requires a showing of more than mere negligence, or even gross negligence. Estelle, 429 U.S. at 105-06. It involves a two-part

4

test.  First, the prisoner must show that objectively, the medical need is "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  A medical need is sufficiently serious "if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) (quoting Laaman v. Helgemoe, 437 F.Supp. 269, 311 (D.N.H. 1977)).   The defendants dispute that plaintiff's medical needs were sufficiently serious to warrant consideration under the Eighth Amendment.

A plaintiff may satisfy the second part of the test by showing that, subjectively, the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837.  It is not enough to establish that the official should have known of the risk.  Id.  A difference of opinion between the inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation, but may provide the basis for a negligence claim.  See Estelle, 429 U.S. at 106-07.  Defendants contend that plaintiff's claim essentially demonstrates a difference of opinion with regard to the course of treatment chosen for plaintiff's medical condition.

Deliberate indifference requires more than negligence, but less than conduct that is undertaken "for the very purpose of causing harm or with knowledge that harm will result."  Farmer, 511 U.S. at 835.  More specifically, deliberate indifference requires that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn and he must also draw the inference."  Id. at 837.  Whether a prison official had the requisite knowledge

5

of a substantial risk can be inferred from circumstantial evidence. Id. at 842.  Defendants argue that they took the necessary steps to evaluate plaintiff's condition, and acted in accord with CDOC regulations using their best medical judgment.

### 1.    Alleged medical indifference.

Plaintiff initially alleged in his Complaint that he suffers from Von Recklenhausen's Disease or neurofibromatosis.  However, an exam paid for by the plaintiff and performed by Eva Sujansky, MD, of the Children's Hospital of Denver, Colorado, has confirmed that plaintiff has multiple lipomatosis, see NEUROCUTANEOUS CLINIC EVALUATION SUMMARY, Docket #73, which is the same diagnosis that had been made by CDOC medical personnel, see BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, Docket #80, Exh. A & Exh. B.

While the diagnosis of plaintiff's ailment is no longer at issue, the plaintiff has consistently alleged that he suffers great pain based on the large, lumpy lesions he has developed because of this disease.  Plaintiff has also alleged that he was previously allowed to take the drug Ultram to manage that pain, but that he is no longer provided with that drug and the drugs which have been prescribed since then do not manage the pain. Defendants assert that the benign skin lesions, or lipomas, which have been caused by the lipomatosis do not rise to the level of a serious medical need that constitute an Eighth Amendment violation.  Plaintiff responds to this argument by reiterating that these "visible tumors" cause him severe and chronic pain.  Defendants contend that treating physicians have noted "no clear etiology for Plaintiff's claimed 'pain'" and that plaintiff's preferred pain medication was discontinued on a previous occasion because his condition is "typically not

that uncomfortable." REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, Docket #91, p. 3; see, also, BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, Docket #80, Exh. A & Exh. B.

The Court of Appeals for the Tenth Circuit has recently opined that "evidence of pain and suffering [which] goes well beyond a twinge" can sufficiently establish the objective element of the deliberate indifference test. See Mata v. Saiz, 427 F.3d 745, 755 (10th Cir. 2005) (citing Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000)).  In her report, Dr. Sujansky indicates that:

> According to the literature, multiple lipomatosis is associated with polyneuralgia, which is causing pain and can also cause tingling and other abnormal sensations.

NEUROCUTANEOUS CLINIC EVALUATION SUMMARY, Docket #73.

Based on the record herein, the matter of whether the lipomas from which the plaintiff suffers cause pain and how extensive that pain can be is a disputed issue between the parties, and is an issue which might affect the outcome of the suit under the governing law.  Accordingly, there are genuine factual issues preventing the entry of judgment against the plaintiff on the objective component of the deliberate indifference test.

While the record precludes the entry of judgment against the plaintiff with regard to the objective component of a sufficiently serious medical need, it does not demonstrate that the defendants acted with deliberate indifference.  The chronology of medical treatment the plaintiff has received, as set forth in plaintiff's response to the defendants' motion and documented by the exhibits and attachments to the defendants' motion, clearly fails to demonstrate that the defendants were deliberately indifferent with respect to

7

plaintiff's medical needs.   See PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, Docket #87, pp. 3-4; BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, Docket #80, Exh. A & Exh. B.

Plaintiff has provided nothing to contradict the evidence demonstrated by the defendants or to show that the measures taken by the defendants in the treatment of plaintiff's condition were not reasonable, or that the measures increased any risk to the plaintiff.  If a prison official knows of a risk of harm to an inmate, but responds reasonably to the known risk, "he will not be held liable even if the harm ultimately is not prevented." Barney v. Pulsipher, 143 F.3d 1299, 1311, n.12 (10th Cir. 1998); Farmer, 511 U.S. at 844-45.  Plaintiff has presented the written opinion of Dr. Sujansky that agrees with the diagnosis of the defendants regarding lipomatosis, rather than neurofibromatosis, and which agrees that the plaintiff should have "sufficient medication for control of his pain." NEUROCUTANEOUS CLINIC EVALUATION SUMMARY, Docket #73.  While Dr. Sujansky indicated in her summary that "I believe [plaintiff] should be placed back on medication which controlled his pain, such as Ultram or something similar," id., this statement is most certainly based on the Doctor's earlier notation that "the [CDOC] has discontinued all pain management medications and did not allow him any follow-up specialty care," id.  This notation is fully contradicted by plaintiff's medical records which indicate that he has had Non-Steroidal Anti-Inflammatory Drugs ("NSAIDs") available to him at the times relevant to this case and has received follow-up care for his condition.  See BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, Docket #80, Exh. A & Exh. B.  The record in this regard fails to demonstrate a sufficient disagreement regarding the reasonableness

8

of the measures taken by the CDOC defendants to require submission of the issue to a fact finder for resolution.

Plaintiff also contends that the change in medication with regard to his condition has caused him pain and suffering.  In attempting to establish an issue for trial, plaintiff appears to argue that because he was prescribed Ultram and it allegedly managed his pain, but  now the defendants will no longer prescribe Ultram for him, the jury can infer deliberate indifference by the defendants because he claims to have severe and chronic pain which drugs other than Ultram or similar other drugs cannot manage.  However, this condition is not so obvious that a lay person would be able, without verifying medical evidence or expert opinion, to draw the conclusion the plaintiff indicates.

To meet medical indifference evidentiary standards clearly requires plaintiff to present testimony from a medical professional whereby the professional states his or her opinion that the potential for severe and chronic pain as a result of the failure of the defendants to prescribe Ultram or any other narcotic drug to the plaintiff for pain management is so obvious that any person who is licensed as a medical professional must be deemed to know that the failure to provide such a prescription is substantially likely to lead to such pain.  Finally, in addition to demonstrating that defendants knew that their actions were substantially likely to cause plaintiff's severe and chronic pain, plaintiff must present evidence that tends to show that defendants deprived him of the medication not for any medical reason, but because they simply did not care that plaintiff was substantially likely to suffer pain and suffering as a result of their failures to provide such items.

In  Colorado,  a  party  who  brings  a  claim  of  negligence  against  a  medical

9

professional who is subject to licensing requirements in this state is required to provide a

"certificate of review" from an expert or similarly-licensed professional which demonstrates

that (1) the complainant has consulted a person who has expertise in the area of the

alleged conduct; and (2) that the person who was consulted has reviewed all material

relevant to the alleged conduct and concluded that the claim does not lack substantial

justification. See Colo.Rev.Stat. § 13-20-602(3)(a).   The medical professionals who

oversee the care of inmates who are in the custody of the CDOC are subject to a much

higher standard than mere negligence in a medical indifference case, and plaintiff is

required to demonstrate that the conduct of the medical personnel at CDOC fell below that

higher standard.   Accordingly, at a minimum, plaintiff should be required to obtain and

submit the opinion of an expert that would establish defendants' lack of compliance with

the constitutional standard of care, and failure to submit such an opinion should be fatal

to a plaintiff's case.   See Estate of Cole v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1990).

The plaintiff has not done so.

 Only by presenting such testimony through a medical expert can plaintiff meet the

test that is required to demonstrate the existence of deliberate indifference on the part of

defendants.   Only a medical expert can offer opinions on matters of medical causation,

including such issues as whether NSAIDs or other non-narcotic drugs are insufficient to

manage pain experienced by the plaintiff, and therefore the failure to prescribe Ultram or

another narcotic drug *caused* the plaintiff's pain.   Plaintiff himself lacks the medical

knowledge and expertise to offer any opinions on the issues of causation that underlie his

claims against defendants.   Thus, without the testimony and opinions of an expert to meet

the above tests and standards, plaintiff cannot state a prima facie case.  If he cannot present evidence that would constitute a prima facie case, plaintiff's case should be dismissed.

The medical summary authored by Dr. Sujansky merely evidences a difference in opinion as to course of treatment, and provides no basis for causation.  Without any evidence that the change in medicine is a contributing factor or the cause of an increase in plaintiff's condition or of any substantial harm sustained by the plaintiff, the plaintiff's allegations are conclusory statements and fail to establish a genuine issue of material fact to survive summary judgment.

Survival of this claim under the defendants' summary judgment motion turns on the distinction between "deliberate indifference" and ordinary "negligence."  While the plaintiff's allegations parrot the "deliberate indifference" terminology of <u>Estelle</u> and its progeny, he fails to demonstrate any facts or evidence in support of the contention.  In this case, even when viewing the record in a light most favorable to the plaintiff, it simply does not support the plaintiff's position.

The summary authored by Dr. Sujansky may be helpful in demonstrating a duty or standard of care which would be the focus under a claim of negligence.  However, this report – without more – does not create a genuine issue of material fact regarding a claim of deliberate indifference where the focus is on the knowledge of an excessive risk to an inmate's health <u>and</u> disregard of that knowledge.   From the record, it is apparent that there may be a more preferred method of medical treatment and care available, but does not demonstrate that failing to treat the plaintiff in that manner constitutes deliberate

11

indifference.  The record demonstrates that the defendants have followed a course of treatment and care, which others in the medical community may have disagreed with, but did not deliberately disregard plaintiff's medical needs.  Plaintiff's claim in this regard boils down to a disagreement with the treatment and care that was administered.

While it is clear that the plaintiff does not agree with nor is he satisfied with the medical treatment he received, the fact remains that he was seen by medical personnel on a regular basis and that he received medical treatment.  His difference of opinion concerning the treatment he received will not support a claim of deliberate indifference against these defendants.  See Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993). Construing the record in a light most favorable to the plaintiff, his allegations struggle to rise even to the level of negligence.

The record demonstrates that a reasonable fact finder could not conclude that the actions by defendants constitute a valid Eighth Amendment deliberate indifference claim. Therefore, summary judgment is appropriate on plaintiff's claim against these defendants.

### C.    Qualified Immunity.

Public officials performing discretionary functions are accorded qualified immunity from liability.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for officials to lose their qualified immunity, their conduct must violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Id.  Accordingly, the individual defendants are entitled to qualified immunity if the plaintiff fails to establish a claim for violation of a constitutional right.

Viewing the facts contained in the Complaint and the evidence in the record in a

light most favorable to the plaintiff, he has failed to demonstrate a genuine issue of material fact such that a reasonable jury could find in his favor concerning his allegations of a violation of a constitutionally protected right, and therefore, the individual defendants in this case are entitled to qualified immunity.  See Siegert v. Gilley, 500 U.S. 226, 233 (1991) (failure to make out a violation of a clearly established constitutional right is a failure to satisfy necessary threshold inquiry in determination of qualified immunity claim).

## CONCLUSION

Based on the foregoing, and the entire record herein, it is hereby **RECOMMENDED** that the defendants' Motion For Summary Judgment [Filed March 18, 2005; Docket #79] be **GRANTED**, and this lawsuit be **DISMISSED,** in its entirety, with prejudice.

Dated at Denver, Colorado, this 28th day of December, 2005.

BY THE COURT:

s/ O. Edward Schlatter
O. Edward Schlatter
United States Magistrate Judge

13

## ADVISEMENT UNDER FED. R. CIV. P. 72

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. Thomas v. Arn, 474 U.S. 140, 155 (1985); Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991); Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).